Good afternoon, Mr. Wigman. Good afternoon, Justice Wright. This is Schmidt. This is McDade. My name is Jay Wigman. I am an attorney for defendant and felon Christopher Armstrong who asserts as his sole issue on appeal that the state failed to prove him guilty beyond a reasonable doubt. The facts of the case are rather quickly summarized, which statement in part reflects the dearth of evidence that was presented against the defendant at trial. At trial, none of the four eyewitnesses were able to identify the defendant. There were two witnesses who presented conflicting testimony. One indicated that the shooter they saw came from the right side of the street. The other indicated that he came from the left side of the street. One indicated that he was dressed all in black. The other indicated that he was dressed in blue shorts and a white t-shirt. One indicated that they stopped and that somebody walked up to a house with some Iraqi refugees and spoke with them. And then they drove to the appointed meeting place where there was to be a drug deal consummated. The other said that there was never any such stop. The one thing that these two witnesses, and I'm speaking of Williams and Pomerley, agreed upon is that they were unable to identify the shooter because he wore a hoodie that covered his face and they weren't able to identify him. That was the only thing upon which they agreed. This reflects later upon the identification of the one witness who testified prior to trial as to the identification of the defendant. And he didn't identify him by any physical characteristics. He simply said it was Chris Armstrong who did it. There was nothing otherwise to indicate that Armstrong had been involved, as again, the two eyewitnesses were unable to identify him. The statement given prior to trial that was later recanted is unreliable in part because of the status of the witness. And in this case, I'm speaking of Linwood, who had a prior conviction. He was not under oath when he gave the statement, and he clearly had motive to give a statement implicating somebody else because at the time of the statement, one day after the incident, he showed up because his friend had been called to the police station and he was seeking to get him released from jail at that time. He had clear motive to testify that it was somebody other than who the police suspected. Conversely, there's no motive that has been shown in this case for the defendant. There's nothing to indicate his involvement other than the lone witness saying, that's who I saw on the scene, when two other witnesses said that you wouldn't be able to identify that person. Part of the reason further that I say that there's no motive is that the lone other piece of evidence that possibly connects the defendant is the contact of the victim in this case. But that went both ways. There were approximately 12 calls. I believe the state counted 13. I counted 12. And those calls went in both directions. They were from the defendant. They were from the victim. If the victim was contacting the defendant, then it stands to reason that it wasn't a hostile series of exchanges, that these two knew each other somehow. So to the extent that it shows that they were in contact, there's nothing to show that there was any sort of attack by the defendant in this cause, as appears to be the theory of the case. But that phone connection, as I say, is rather tenuous, because all that there was was the testimony of Shettleworth, later recanted at trial, that that phone belonged to the defendant. When the phone records were brought in and representatives of the corporation, I believe Sprint, testified, they weren't able to indicate whose telephone it was. It was just Shettleworth saying that he recognized that phone number as being the defendant's. To the extent that it shows that it was the defendant's phone, there was nothing to indicate that it was the defendant making the phone calls. There's nothing to indicate from where the defendant was making the phone calls. And there's nothing to show what the subject of those phone calls was. Those are the two sole connections between the defendant and the incident case. That one witness out of four who had some unreliability issues to begin with said, this is the person who did it. And again, he had motive to point the finger away from the person who was initially being questioned by the police, one of the people involved in this drug deal, that being the witness Pomeroy. Secondly, the other piece of evidence to the in Arcos, a case cited in the opening brief, there was a brief discussion by the reviewing court as to evidence that seemed to possibly corroborate the judge's determination as to the reliability of the witness. But Arcos distinguished that away by noting that there was nothing to tie the defendant to the elements of the offense. And here, again, there's nothing to tie him to the elements of the offense, even possibly presence on the scene. I recognize that, and we have noted in our brief, that the standard of review is that we're to look at this in the light most favorable to the state. What I'm asking is that this court not let itself be blinded by the light. There is nothing here that is sufficient to prove the defendant guilty beyond a reasonable doubt. And the best sort of proof of that, or support for that argument, comes from a contrast with the cases presented by the state, in each of which there existed other corroboration and other things to support the case. Perhaps the best example of that is the well-known Collins standard. And in Collins, in rereading through that, I was interested to note that the witness made these claims. And part of the support for the witness's statement in that case was that the police were able, with his direction, to find the gun that had been thrown into Lake Michigan. And it surprised me. And given the condition of the gun when it was found, it had obviously been there for a while. The fact that he could lead them that clearly, and they could find a gun in Lake Michigan that had corresponding lands and grooves and could be identified as possibly being the weapon that was used, despite the rust and the condition of the gun, suggests that there was strong corroboration. And that wasn't the only thing that tied things in Collins. In each of the cases cited by the state, whether it's Craig or McCarter, there is, again, sufficient and substantial corroboration. In Craig, I believe it was, there were 16 shell casings left at the scene. Several of them were found to match that the gun that the defendant had that he later threw out of the window during one of several police chases involving him. The fact that he ran twice, the fact that they found a gun that matched the bullets was, again, corroboration. This kind of has been held repeatedly, and it should be, that it is sufficient to have one eyewitness if that evidence is, if that witness himself is credible and if his testimony is positive. Well, here there's an extreme lack of credibility with the witness whose friend was a suspect in this, who himself was involved in a drug deal that perhaps shaded or covered his dealings with the police. And then we look at the question of whether the testimony is positive. And usually, in that context, the question is, is there enough between the description that is given and the defendant himself to tie them together? Barnes is an example that the state used in its brief, and in Barnes, the defendant had some unusual characteristics. He apparently had a wide nose, he had some scars on his face. And it was that, as much as anything, that led the court to find that there was corroboration and that there was a connection. Here, there wasn't even a description given. It was simply a name. This is who it is. There was nothing for the police to be able to use to tie the defendant to the description that was given or to, in any way, measure what they were being by Pomeroy. It was simply, or I'm sorry, Linwood. It was simply, this is what I saw. And this is the person who did it. Given the extreme lack of credibility, given the dearth of connections between the defendant and the offense, there was no physical evidence that was able to tie the defendant to the scene. Again, there were no other witnesses. And there were witnesses who brought into question the ability to identify the defendant. Given the dearth of evidence, this simply does not amount to evidence beyond a reasonable doubt. And for those reasons, if there are no questions, I would ask that this court reverse the defendant's conviction and vacate the sentence. I have a question. Shuttleworth is the person who said that phone number belongs to the defendant. That's correct. And that phone number was in the victim's call history. Yes. But it was one of six different numbers, if I'm not mistaken. It was one of six different numbers that were called back and forth during that approximately hour. Is there any corroboration other than Shuttleworth's statement that that was the defendant's phone number? There is not. There was nothing introduced in the phone records that tied the phone to the defendant. There was no testimony by anybody else. So if we accept that that is the murderer's number, what ties it to the defendant? Just Shuttleworth's testimony is the only thing that ties that phone to the defendant. And I'm sorry, but I've forgotten, who was the person on the porch? Shuttleworth was the person on the porch. And Shuttleworth was initially a suspect in the call. All right. That helps me. Thank you. Thank you. Any further questions? Good afternoon, Your Honors. David Lease, the Court Counsel. The major point I wish to make is we should not integrate substantively admitted prior inconsistent statements. The law says it's wholly valid evidence, and that is the big point here. Here that statement was videotaped and played for the jury so the jury got to make the credibility determination that we asked jurors to make. Such a statement can support a conviction even without corroborative evidence, although there was that here. That's Craig et al. Every case I've mentioned in my argument I've cited in the brief. If it meets Section 115-10.1's criteria, no further analysis. The jury decides its weight. There are no, quote unquote, suspect categories of evidence. The same standard of review, happily the standard that favors the state, the common standard applies to all. The McCarter case said substantively admitted prior inconsistent statements are considered the same as direct testimony from the witness and accorded weight based on the same factors as direct testimony. Here, Detective McDaniel said Linwood picked the defendant from the lineup as the shooter, obviously him saying the shooter no longer had braids. Linwood knew the shooter as the detective thought he said, Mo, I'm quoting here, M-O, Chris. Linwood's video statement per Detective McDaniel was that he saw the victim scuffling with the shooter, said he could see real good, again you'll see this all in the video statement. He said he knew the shooter, again he's not identifying some stranger, and he identified the person on the porch and that was Shuttleworth and the defendant shooter. At trial, Linwood even admitted seeing the defendant around the neighborhood before, obviously again he's identifying a guy he knew. He knew him from years back by a nickname and claimed, then he claimed he identified him in the lineup only as the one others said shot the victim. That was how Linwood tried to, if I might characterize it, weasel out of his to the DVD of Linwood's statement. He said he recognized the defendant's face, he saw what happened with his own eyes, he said the shooter was Stone or Stone Chris, rather than Mo Chris, apparently were involving a hearing problem, but a long O in whatever case. He said he was in the car right behind the victim and saw the victim get shot, quote, with my own eyes, close quote. Look at the DVDs, your honor, I know you will, whether I tell you to or not, his demeanor on quite calm and straightforward. Linwood identified a defendant he knew, which strengthens his identification. There was no reason for Linwood to lie to the police. The police at that time were not aware of any drug situation, as there was no evidence that Linwood or Pomerley had told them of that by this point. That he implicated himself in a possible drug offense through his testimony somewhat bolsters the truthfulness of his statement. In any case, this was for the jury to decide. Moreover, the defendant and the victim were in frequent phone contact in the hour before the shooting. Shuttleworth, in his substantively admitted prior and consistent statement, which was played for the jury once again, identified the defendant's phone number, it was never contradicted, the police had the victim's phone number, there were 13 calls, there's talk about there being six calls involving other numbers, but there were 13 calls between the of itself. That doesn't mean much. Together with the shooting and an eyewitness who says he did it and an eyewitness who identified the defendant in the police lineup, together with those two bits of evidence, that becomes very significant. They were clearly in close contact. The common standard, I'm telling you nothing you don't know, you look at the evidence and like most favorable to the people. The prior and consistent statements here were fully proper evidence, and luckily for us they were on DVDs and the jury could see them. The defendant's case of Arcos is really not in point, your honors. There was a bench trial there and the judge found the recanting witness to be disreputable and simply could not be believed. Nothing like that happened here. This is a straightforward case. The jury believed the video statements, the jury believed the defendant shot the victim. The defendant's argument is truly, with respect, one made more appropriately to the trier fact than to the appellate court. There's no evidence anyone else shot the victim. We're not saying obviously the court's powerless to reverse a conviction based on recanted testimony. We're saying that under the Collins standard, the appellate court should not hear where the jury saw the two videotaped prior statements. It's for the jury to credit or not the prior statements, and crediting them here was patently reasonable. The defendant argues cases, other cases were cited had corroborative evidence. True, true they did, but it is not needed, and here we had corroborative evidence in addition to the witness on the video statement saying that's the defendant. We have the phone calls and we have the officer's testimony that the witness also picked the defendant out of a photo lineup. The point is this case did not involve some kind of lesser evidence. For my final redundant point, my penultimate final redundant point, I will say the jury again saw the video statements and, you know, your honors, in a way it's almost like we're returning to the arguments defendants used to make in rape cases. You know, you had to have an extra good case for a rape conviction to stand. Rape evidence had to be corroborated. Well, the court did away with that, as we all know, prior inconsistent statement evidence is perfectly good evidence, and here happily it was videotaped, the jury saw it, and under the very favorable to the prosecution common standard, there was proof beyond a reasonable doubt. Thank you, your honors. I have a question. Yes, ma'am. The phone calls tying defendant to the victim, how close in time is the last phone call? They're all within the but they're all 13 of them were in the hour before the shooting, so my inference would be a few minutes before, but you'll see that it's in there. Why is it more likely that the defendant committed this murder when he was one of six callers just because of the number? Well, 13 of them and that together with an eyewitness identification of him on the phone calls corroborate. They're a nice extra bit. It's obviously they were no strangers, and this was a drug transaction. You know, the inference and, you know, juries are to draw inferences from the facts. You know, obviously it was a drug case that was somebody who's being set up or something was going wrong, but together with all of itself, it would mean nothing. With evidence here, it means a good deal. Thank you. For the most part, the state and I are in agreement as to the framework and the way in which the case should be viewed, but our interpretations are a little bit different, so there are just two or three points that I would like to touch upon. And the first is that let's assume for a minute that this was not a prior and consistent statement, that it was simply part of the evidence of trial. And I think if you look at it in that light and agree with the state for a moment that there is no qualitative difference between a prior and consistent statement that's recanted and testament that it was given at trial. Had this statement simply been given at trial, our argument still would be that it's insufficient given the balance of the other evidence for a finding that the defendant was guilty beyond a reasonable doubt. In that case, if it's just one of the four possible eyewitness identifications, you have one statement picking the defendant out under circumstances where the other witnesses who were in the exact same location, at least two of them were, as that witness said we couldn't identify him. And one of those witnesses, Pomerley, was also presented with a photo lineup with a picture that included the defendant and was not able to pick the defendant out of that lineup. So in that instance, you have one witness, three others, even in the light most favorable to the state, given as well the prior convictions of Linwood and the circumstances of two other witnesses. And that's assuming that you place recanted testimony on a par with trial testimony. And again, it is our position that, unarguably, it is not the same and it is not the equivalent. It is admitted, it certainly can be allowed, but you have to bring into question the fact that he's not willing under oath to say this is who did it. That he may have made that statement before, but he had reason to do so and motive to do so before. And again, those statements bring into question. Otherwise, if you take the state's argument and extrapolate that, essentially what the state has in its brief is that this evidence can't even be questioned. It was admitted, so it was proved reliable enough to go before the jury. The jury believed it. And so now at this stage, this court is not empowered to review the question. But in each of the cases that the state has cited, obviously there is appellate review. And many times that has gone against the state, despite what the jury has found. And in the cases that the jury has cited where the jury has supported or where the appellate court has found that there was sufficient evidence, there was other evidence. There was corroborative evidence. There were more eyewitnesses. There weren't contradictions between the eyewitnesses that vitiated the testimony. That was all present here in this case. Another comment that I want to briefly address is that the state argued that the phone number was never contradicted. But that's not the defendant's burden. And even if it were, I'm not sure how the defendant contradicts that. How you prove a negative is not something with which I'm familiar. In this case, the state was not able to provide evidence directly tying the phone to the defendant. Even though the corporation that provides that phone came in to testify, they didn't have evidence as to whom that number was assigned. But beyond that- Why not? Is it just one of the phones you buy at Walmart that isn't- That I don't know. And that's probably a fair presumption. But there was nothing tying the defendant to that phone. It wasn't an assigned number in terms of a name or who paid the bill, I assume. But beyond that, we don't know. I interrupted you. I apologize. No, no, no. I welcome the questions. And if there are any more, I'm happy to address them. If there aren't any, again, I would simply ask that this court reverse defendant's convictions and vacate itself. Thank you very much. We will be taking the matter under advisement and rendering the decision without undue delay. And for now, we stand in recess.